```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
O.R. INDIVIDUALLY AND ON BEHALF OF       :
K.G.,
                                          :      OPINION AND ORDER
              Plaintiffs,
                                          :      17 Civ. 9974 (GWG)
       -v.-
                                          :
NEW YORK CITY DEPARTMENT OF
EDUCATION,                                :

                                          :
              Defendant.                  :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff O.R., individually and behalf of her son, K.G., brings this action against defendant New York City Department of Education ("DOE") for attorney's fees, costs, and expenses, in connection with an administrative proceeding brought to enforce K.G.'s right to a "free appropriate public education" under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.[1] For the reasons that follow, the Court grants plaintiff's

---

[1] See Notice of Motion, filed June 15, 2018 (Docket # 21); Plaintiffs' Memorandum of Law in Support of Their Motion for an Award of Attorneys' Fees, Costs, and Expenses, filed June 15, 2018 (Docket # 22) ("P. Mem."); Declaration of Gina M. DeCrescenzo, filed June 15, 2018 (Docket # 23) ("DeCrescenzo Decl."); Declaration of Charlene Lolis, filed June 15, 2018 (Docket # 24); Declaration of Benjamin Brown, filed June 15, 2018 (Docket # 25) ("Brown Decl."); Affidavit of Jasbrinder Sahni, filed June 15, 2018 (Docket # 26); Affidavit of Steven J. Alizio, filed June 15, 2018 (Docket # 27) ("Alizio Aff."); Declaration of H. Jeffrey Marcus, filed June 15, 2018 (Docket # 28) ("Marcus Decl."); Affidavit of Irina Roller, filed June 15, 2018 (Docket # 29) ("Roller Aff."); Declaration of Andrew K. Cuddy, filed June 15, 2018 (Docket # 30) ("Cuddy Decl."); Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses, filed July 16, 2018 (Docket # 31) ("D. Mem."); Declaration of Lana Koroleva, filed July 16, 2018 (Docket # 32) ("Koroleva Decl."); Declaration of Roslyn Roth, filed July 16, 2018 (Docket # 33) ("Roth Decl."); Plaintiff's Reply Memorandum of Law in Support of Their Motion for an Award of Attorneys' Fees, Costs, and Expenses, filed August 13, 2018 (Docket # 36) ("P. Reply"); Reply Declaration of Gina M. DeCrescenzo, filed August 13, 2018 (Docket # 37) ("DeCrescenzo Reply Decl."); Supplemental Declaration of Gina M. DeCrescenzo, filed August 13, 2018 (Docket # 38); Supplemental

request in the amount of $34,435.11.

I. BACKGROUND

On May 19, 2016, O.R. filed a complaint against the DOE alleging that her son, K.G., had been denied a free appropriate public education, and requesting funding for multiple remedial measures to be paid for by DOE. See Demand for Due Process Hearing, dated May 19, 2016 (filed as Docket # 23-2). O.R. alleged that K.G. had fallen below grade level and had not received the assistance from DOE to which he was entitled. See DeCrescenzo Decl. ¶¶ 20-24. An independent hearing officer ("IHO") held six hearings in 2016 through 2017, during two of which witnesses gave testimony. See id.; D. Mem. at 3. The DOE opposed some but not all of the relief sought by O.R. See Findings of Fact and Decision, dated June 29, 2017 (filed as Docket # 23-3) ("IHO decision"), at 5. On June 29, 2017, the IHO found for O.R. in large part, and ordered that DOE fund the cost of various remedial measures, which included speech therapy, neuropsychological and functional behavior analysis, and 520 hours of one-on-one tutoring. Id. at 16-17.

After the IHO decision, the parties attempted to settle O.R.'s claim for attorney's fees but were unable to do so. See DeCrescenzo Decl. ¶¶ 61-70. On December 21, 2017, O.R. brought this action for attorney's fees under the IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B), for both the underlying administrative hearing and the fee application itself. See Complaint, filed December 21, 2017 (Docket # 1). On April 3, 2018, DOE served an offer

---

Declaration of Benjamin Brown, filed August 13, 2018 (Docket # 39); Supplemental Declaration of Charlene Lolis, filed August 13, 2018 (Docket # 40); Defendant's Memorandum of Law in Sur-Reply to Plaintiffs' Motion for Attorneys' Fees, Costs and Expenses, filed August 29, 2018 (Docket # 41) ("D. Surreply"); Supplemental Declaration of Roslyn Roth, filed August 29, 2018 (Docket # 42).

of settlement for the fees pursuant to 20 U.S.C. § 1415(i)(3)(D) in the amount of $29,100.01. See Korleva Decl. ¶ 3. O.R. did not accept this offer. Id. ¶ 4.

O.R. seeks a total of $63,463.11 for fees, costs, and expenses. P. Reply at 1.[2] DOE opposes the application on the grounds that (1) the hourly rates sought are unreasonable and (2) the number of hours billed is excessive. See D. Mem. at 1. It also seeks to limit the amount O.R. may claim as a result of the offer of settlement. D. Surreply at 16.

II. DISCUSSION

The IDEA, "ensure[s] that children with disabilities . . . are guaranteed procedural safeguards with respect to the provision of a free appropriate public education." 20 U.S.C. § 1415(a). The statute grants a court discretion to "award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). A "prevailing party" is one who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." G.M. ex rel. R.F. v. New Britain Bd. of Educ., 173 F.3d 77, 81 (2d Cir. 1999) (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989)). Thus, "[i]f the guardian of a child with a disability successfully enforces his or her rights under the IDEA in an administrative action, the statute authorizes courts to award reasonable attorney fees to the guardian." Id. at 80. DOE does not contest that the plaintiff is entitled to an award of attorney's fees. See D. Mem. at 3-4.

---

[2] Plaintiff's first brief sought a total of $50,887.11 in fees, costs, and expenses as of June 1, 2018, approximately two weeks before their brief was filed. See P. Mem. at 15. Plaintiff then reduced her claim of fees through June 1, 2018, to $49,867.11. See P. Reply at 1. In her reply brief, she seeks compensation for the period from June 2, 2018, to August 13, 2018, the date her reply brief was filed, totaling an additional $13,596. See P. Reply at 20.

The Second Circuit has said that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). This calculation yields a "presumptively reasonable fee," which is also referred to as the "lodestar." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citations and internal quotation marks omitted). The lodestar figure "includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543 (2010) (internal quotation marks omitted) (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 566 (1986)).

A. Reasonable Hourly Rates

In determining whether the hourly rate is reasonable, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); accord Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999).

To determine an appropriate hourly rate, Arbor Hill directs that a court engage in the following process:

> [T]he district court, in exercising its considerable discretion, [is] to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire

4

> to obtain the reputational benefits that might accrue from being associated with the case.

522 F.3d at 190 (emphasis in original). The "Johnson factors" are those laid out in <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974). These are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Arbor Hill</u>, 522 F.3d at 186 n.3 (citing <u>Johnson</u>, 488 F.2d at 717-19).

<u>Arbor Hill</u> specifically identified the following factors to be considered in determining what a reasonable, paying client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted <u>pro</u> <u>bono</u> (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

<u>Id.</u> at 184.

Importantly, <u>Arbor Hill</u> held that a court must "step[] into the shoes of the reasonable, paying client, who wishes to pay the <u>least amount necessary to litigate the case effectively</u>." 522 F.3d at 184 (emphasis added). In other words, whether the attorneys on this case properly command the rates they seek in the marketplace is not dispositive of the rate that they are to be awarded. Rather, <u>Arbor Hill</u> demands that we determine the <u>cheapest</u> hourly rate an effective attorney would have charged.

5

Here, Gina M. DeCrescenzo seeks $400 and the DOE counters that $325 is the appropriate rate. See P. Reply at 6; DeCrescenzo Decl. ¶ 48; D. Mem. at 7. We are somewhat hampered in our effort to fix an appropriate rate by the fact that there is little evidence to support the notion that there is a market among paying clients for engaging the IDEA litigation services provided by plaintiff's lawyers. Plaintiff has submitted affidavits and declarations from a number of practioners in the area as to the rates at which they bill. See Alizio Aff. ¶¶ 13-14; Marcus Decl. ¶¶ 19-32; Roller Aff. ¶ 6; Cuddy Decl. ¶¶ 14-17. But none of them reflect that any client has actually paid the billed rate, let alone that clients regularly do so. DeCrescenzo states that she has paying clients who pay her billed rate, but does not say that any of them involve claims under the IDEA. DeCrescenzo Decl. ¶ 46.

We note that there are two cases from this district involving Gina DeCrescenzo, P.C. and similar IDEA litigation: P.R. v. New York City Dep't of Educ., 2018 WL 4301366 (S.D.N.Y. Sept. 10, 2018) ("P.R."), adopting 2018 WL 4328012 (S.D.N.Y. July 19, 2018) ("P.R. R&R") and B.B. v. New York City Dep't of Educ., 2018 WL 1229732 (S.D.N.Y. Mar. 8, 2018) ("B.B."), adopting in part and rejecting in part, 2018 WL 3300700 (S.D.N.Y. Jan. 29, 2018).

B.B. found that DeCrescenzo's hourly rate of $400 was excessive and awarded a rate of $350. See 2018 WL 1229732, at *2. In B.B., the court noted that "the underlying administrative action involved relatively minimal effort, and involved a brief, uncontested hearing resulting in limited success beyond that conceded by the Defendant." Id.

P.R. awarded the $400 rate sought by DeCrescenzo. 2018 WL 4301366, at *2; see P.R. R&R, 2018 WL 4328012, at *11. In contrast to the legal work done in B.B., P.R. involved work on two separate due process claims, 12 hearings from March 2016 to January 2017, and two interim orders. See P.R. R&R, 2018 WL 4328012, at *10. The court found "that the plaintiff

6

obtained a substantial degree of success because [the child] received a significant part of the relief the plaintiff sought, including the placement of [the child] in an independent school, 671 hours of compensatory academic tutoring and 600 hours of compensatory-related services." Id.

This case involved one due process claim, and while there were six hearing dates from July 2016 to March 2017, only two involved live witness testimony, and the total hearing time was less than five hours. See Roth Decl. ¶¶ 5-11; DeCrescenzo Decl. ¶¶ 22-24. This suggests that $350 is closer to the appropriate rate for this case than $400 if we were to consider only P.R. and B.B.

While we have considered all the Arbor Hill and Johnson factors to the extent there is information in the record, we will not make findings as to each factor. See Lochren v. Cty. of Suffolk, 344 F. App'x 706, 709 (2d Cir. 2009) ("Arbor Hill did not hold that district courts must recite and make separate findings as to all twelve Johnson factors."). Instead, we note that there is no persuasive showing that this case involved novel or difficult questions or unusual skill. The stakes in monetary terms were not unusually high. When DeCrescenzo started her work on this case in 2016, she had been admitted to practice for eight years and had at most six years of experience with IDEA cases, with only four years of specialization in such cases. See DeCrescenzo Decl. ¶¶ 35-43; Resume of Gina M. DeCrescenzo (filed as Docket # 23-6). This is not at the high end of attorney experience. The ultimate relief ordered was not wide-ranging. See IHO Decision, at 16.

In 2012, one case awarded an attorney with approximately 12 years of experience in the IDEA area a rate of $300 per hour. See G.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 432-33 & n.16 (S.D.N.Y. 2012). Using a standard inflation index from the U.S. Department of Labor, see https://data.bls.gov/cgi-bin/cpicalc.pl, this rate would be

7

approximately $327 today.  In light of the fact that Arbor Hill requires that we must award the "least amount necessary to litigate the case effectively," we conclude that a reasonable paying client would expect to pay no more than $350 for the services of the type offered here by DeCrescenzo.  This is consistent with the rate awarded in cases involving other specialized litigation areas.  See Hernandez v. JRPAC Inc., 2017 WL 66325, at *3 (S.D.N.Y. Jan. 6, 2017) (finding that "[a]s to senior attorneys or associates, the case law has approved rates of $300 an hour for those with eight or more years' experience" and awarding attorney with 12 years' experience $350 per hour) (Fair Labor Standards Act); Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of Intern. Union of Operating Engineers, Loc. 15, 15A, 15C and 15D, AFL-CIO v. Eastport Excavation & Utilities Inc., 3 F. Supp. 3d 204, 220 (S.D.N.Y. 2014)  (approving requested market rate of $325 for partner with 19 years experience in ERISA litigation).

Of Counsel attorney Trevor Eisenman has been practicing law for over 11 years and has served in an of-counsel capacity at Gina DeCrescenzo, P.C., since 2014 or 2015.  See DeCrescenzo Decl. ¶ 50; Resume of Trevor S. Eisenman (filed as Docket # 23-9).  While he has practiced for a time period similar to that of DeCrescenzo, his resume reflects at most four years of experience in the education field.  Moreover, Eisenman had a limited role in this case.  Indeed, over one-third of his total hours billed is for one day's travel time.  See Itemized table titled "Services Rendered on K.G. Case # 160534" (filed as Docket # 23-1) ("Table of Services Rendered"), at *3.[3]  Given Eisenman's background and limited role in the case, the Court finds his appropriate hourly rate is $300.

---

[3] Page numbers identified by "*_" refer to the pagination provided by the Court's ECF system.

Associate Benjamin Brown has been practicing law for approximately six years, specializing in education rights and IDEA law for approximately one year. See Resume of Benjamin Brown (filed as Docket # 23-7). P.R. found that Brown's rate of $300 was reasonable. See 2018 WL 4301366, at *2; P.R. R&R, 2018 WL 4328012, at *10-11. B.B. permitted an hourly rate of $200. See 2018 WL 1229732, at *3. Given Brown's lack of experience in IDEA law and the fact that his hours were devoted entirely to litigating the fee petition, and not to any substantive IDEA issues, we find that $225 is an appropriate rate. See Durso v. Modern Food Ctr., Inc., 2018 WL 3019112, at *6 (S.D.N.Y. June 18, 2018) (awarding $225 per hour to associates with three to six years' experience); Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. B&L Moving & Installation, Inc., 2017 WL 4277175, at *7 (S.D.N.Y. Sept. 26, 2017) (finding $225 hourly rate reasonable for associate with three years' experience); Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Dependable Office Installation LLC, 2017 WL 934713, at *8 (S.D.N.Y. Mar. 9, 2017) (finding $225 hourly rate reasonable for associates with three to ten years' experience); Sheet Metal Workers' Nat. Pension Fund v. Maximum Metal Mfrs. Inc., 2015 WL 4935116, at *10 (S.D.N.Y. Aug. 18, 2015) ("[C]ourts in this District have found rates of $125-$300 per hour reasonable for associates, depending on, inter alia, their experience.").[4]

B. Reasonable Number of Hours Expended

In evaluating the reasonableness of hours expended, courts consider "not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v.

---

[4] We do not include a discussion of a rate for Grace Duffin because, for the reasons stated below, no hours are being awarded for her work as an attorney.

Martinez, 973 F.2d 96, 99 (2d Cir. 1992). A claimant is only to be compensated for "hours reasonably expended on the litigation," and not for "hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 433-34.

"Because attorney's fees are dependent on the unique facts of each case, the resolution of this issue is committed to the discretion of the district court." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (citing Hensley, 461 U.S. at 437). In exercising this discretion, a court looks to "its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Id. at 1153 (citation and internal quotation marks omitted).

The Supreme Court has cautioned that "trial courts need not, and should not, become green-eyeshade accountants." Fox v. Vice, 563 U.S. 826, 838 (2011); see also Buckhannon Bd. and Care Home v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 609 (2001) (quoting Hensley, 461 U.S. at 437) (fee requests "should not result in a second major litigation"). As Fox stated, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." 563 U.S. at 838.

As a result, a district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). Rather, a court may use a percentage reduction "as a practical means of trimming fat from a fee application." McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks and citation omitted); accord Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998); Lewis v. Roosevelt Island Corp., 2018 WL 4666070, at *7 (S.D.N.Y. Sept. 28, 2018).

We first address the hours spent at the administrative level and then determine the hours that may be awarded as to the fee application.

1. Administrative Hearing Hours

Plaintiff has submitted a listing of time records that are purportedly based on contemporaneous entries. DeCrescenzo Decl. ¶¶ 28-31; Table of Services Rendered.[5] The entries reflect the following expenditures of time at the administrative level (that is, for dates through June 2017): Gina DeCrescenzo, 92.4 hours; Trevor Eisenman, 5.5 hours; Grace Duffin, 0.4 hours; Charlene Lolis (a paralegal), 6.1 hours.

As for paralegal time billed by Lolis, the entries plainly reflect work of a secretarial nature, including copying a file, informing individuals about hearing scheduling, preparing a bill, and having other ministerial communications with witnesses or clients. See Table of Services Rendered, at *5-6. The Supreme Court held almost three decades ago that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989). Since that time, case law holds that such secretarial tasks are considered part of a firm's overhead and are not to be included as part of an award for costs and fees. See, e.g., Deferio v. City of Syracuse, 2018 WL 3069200, at *6 (N.D.N.Y. June 21, 2018) ("Clerical and secretarial services are part of overhead and are not

---

[5] The record contains sworn testimony from someone with personal knowledge – DeCrescenzo – that DeCrescenzo's and Brown's records are based on contemporaneous time entries. DeCrescenzo Decl. ¶ 28; Brown Decl. ¶ 3. The record is not so clear that anyone with personal knowledge has attested that Duffin's and Eisenman's time records are actually based on contemporaneous time entries. DeCrescenzo states only that their records are "consistent with the work" that she observed them performing, see DeCrescenzo Decl. ¶ 29, and that the "time" of Duffin and Eisenman "was contemporaneously kept as part of [DeCrescenzo]'s firm's regular business practices," id. ¶ 30. The DOE has made no objection to the contemporaneous aspect of these records, however; accordingly, we do not address the issue further.

generally charged to clients."); Siegel v. Bloomberg L.P., 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016) ("With respect to tasks that are 'purely clerical,' such as downloading, scanning, or copying documents and organizing files, such work is generally not compensable, whether performed by an attorney or a paralegal."); Kottwitz v. Colvin, 114 F. Supp. 3d 145, 151 (S.D.N.Y. 2015) ("[P]urely clerical or secretarial tasks should not be billed under fee shifting statutes regardless of who performs them.") (internal quotation marks and citation omitted; alteration in original); Mugavero v. Arms Acres, Inc., 2010 WL 451045, at *8 (S.D.N.Y. Feb. 9, 2010) ("While it is appropriate for an attorney to review her billing records when preparing a fee application, the time spent typing these records is not recoverable."). The request for fees for Lolis's time was similarly rejected in B.B. 2018 WL 1229723, at *3 n.2. Accordingly, we find none of her time to be compensable.

We have grave concerns about Grace Duffin's hours because her time entries reflect at best secretarial or paralegal tasks. These hours consist of emailing documents to DOE, leaving a message for a witness, and then having a brief conversation with that witness. See Table of Services Rendered, at *3. There is no record that Duffin had any substantive discussions with any attorneys on the case regarding the legal issues occurring before the IHO or spent any time educating herself on such issues. Given the absence of any indication that the work she performed was anything of a substantive legal nature, we find that the obviously secretarial tasks (0.2 hours for emailing and leaving a message) should be eliminated and that the remaining 0.2 hours for a discussion with a witness should be billed at a paralegal rate. G.B. ex rel. N.B., 894 F. Supp. 2d at 439 (internal quotation marks and citation omitted) (courts have the "discretion to reduce the award for time spent by attorneys engaging in less skilled work, like filing and other administrative tasks"); accord Rosso v. Pi Mgmt. Assocs., 2006 WL 1227671, at *4 (S.D.N.Y.

May 3, 2006). The Court will award the standard paralegal rate of $75 per hour. See Lujuan v. JPG LLC, 2018 WL 3353060, at *2 (S.D.N.Y. June 6, 2018) (citation omitted) ("courts in this Circuit have generally found $75 to be reasonable" for a paralegal); accord Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co., Inc., 291 F. Supp. 3d 554, 562 (S.D.N.Y. 2018).

We reject DOE's argument that no hours should be allowed for Eisenman. D. Mem. at 17. Nonetheless, based on the inordinate amount of preparation time billed by Eisenman to appear at a four minute hearing (2.5 hours), see Roth Decl. ¶ 8, we reduce his preparation time to 1.0 hour, and allow a total of 4.0 hours for his time.

We thus are left with a claim of 92.4 hours by DeCrescenzo, which is the lion's share of the fee claim for the administrative hearing.

We have considered each side's arguments regarding these hours along with the contemporaneous time records. We have also examined the transcripts of the hearings (to the extent any portions have been put in the record) and documents in the record that were presented by plaintiff and DOE. Having done so, we are not persuaded that the full amount of time sought by plaintiff would be appropriately awarded.

Paramount in our consideration is that notwithstanding the holding of six hearings, only two of them involved witness testimony. See Roth Decl. ¶¶ 5-10; Exhibits A through F (copies of the hearing transcripts filed as Docket ## 33-1 to 33-6); D. Mem. at 3, 9. Two of the hearings largely involved submitting written exhibits and scheduling issues and lasted less than an hour each. D. Mem. at 2-3; Roth Decl. ¶¶ 5-6. The remaining two hearings lasted five minutes or less. D. Mem. at 3; Roth Decl. ¶¶ 7, 9.

The hearing on September 29, 2016, for example, lasted five minutes and was conducted by telephone. See Transcript of hearing held on September 29, 2016 (filed as Docket # 33-3).

13

The transcript shows that the telephonic appearance was arranged by email prior to the hearing. Id. at 64. The time records reflect that this email was sent either on September 22 or September 26. See Table of Services Rendered, at *2. Yet 5.5 hours were billed between the September 26 email and the September 29 hearing for conversations with the client, "[p]relitigation work," and time identified as "prepar[ing] for [the September 29] hearing." Id.[6] This is excessive for a five minute hearing. We cite this only as an example. In all, there were more than 20 hours that appear to be attributable to preparation for the hearings.

Of equal concern, the time records identify some tasks simply as "pre-litigation work" and variants of "prepar[ing]" for the hearing – which occurs in a number of entries, see entries of 9/29/16, 9/27/16, 8/22/16, 8/19/16 in Table of Services Rendered, at *1-2, totaling more than 10 hours. Such descriptions hamper this Court's review because they do not indicate what specific tasks were accomplished — for example, a conversation with a witness to prepare for hearing testimony, a conversation with an adversary, the drafting of an identified letter or brief, reading or summarizing medical records, or the drafting of a direct examination outline.[7] In some instances, it may be that the statement referring to "prepar[ing]" for a hearing was intended to cover more specific entries that are listed in the same description. But at least one time entry (9/27/16 for 3.5 hours) refers to hearing preparation with no other descriptions of tasks.

And even where a description of "prep[aration]" for a hearing is followed by more

---

[6] An additional 2.5 hours was billed on September 29 apparently after the hearing for "[p]re-litigation work; review evidence binder, create notes and outline." Table of Services Rendered, at *1.

[7] We would normally not fault the 7/22/16 entry that reads "[p]repare opening statement . . . for Monday," as it is a specific explanation of the litigation task performed. Unfortunately, it includes the word "etc." which indicates that the entry (for 2.0 hours time) includes tasks that have not been identified.

specific descriptions, the task descriptions are aggregated together into a single block of time so that it is impossible to tell what amount of time is allocated to each task. Time entries of this type are commonly referred to as "block billing" — that is, the aggregation of a number of tasks in a single time entry. Because block billing interferes with the ability of a court to evaluate the reasonableness of attorney hours, its use often results in a reduction of fees. See, e.g., Erickson Prods., Inc. v. Only Websites, Inc., 2016 WL 1337277, at *4 & *5 (S.D.N.Y. Mar. 31, 2016) (quoting Trs. of Empire State Carpenters Annuity v. Penco United, LLC, 2015 WL 1650960, at *5 (E.D.N.Y. Apr. 14, 2015)) ("block-billing makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided") (40% reduction in fees request); Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd., 2011 WL 8955840, at *7, *10 (S.D.N.Y. Apr. 7, 2011) (25% reduction in part because of block billing and noting that the aggregation of related tasks in a single time entry does not solve the problems of block billing); see also Hollander Glass, 291 F. Supp. 3d at 564 (reductions of 15% and 35% for block billing); Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG, 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (reducing fees by 25% to account for "block billing, vagueness in entries," and excessive time spent).

Further, there appears to be some imprecision in the time records. The travel time for attending the hearings was recorded as being exactly four hours for all five live hearings. DeCrescenzo in her reply declaration states only that the trip is "usually" two hours in each direction. DeCrescenzo Reply Decl. ¶ 7. Also, the time spent at the hearings is not separated out into the various tasks that DeCrescenzo suggests in her reply declaration occurred on the hearing dates. Id. ¶ 11.

15

Finally, we are persuaded that some of the work performed by DeCrescenzo could have been delegated to an attorney with less seniority and with a cheaper rate — in particular, the nearly 10 hours devoted to discussing the case with the client.

While DOE seeks a 25% reduction in hours, D. Mem. at 17, we conclude that a 15% reduction is appropriate in DeCrescenzo's hours, resulting in a total of 78.54 hours.

In sum, the following hours are awarded for the administrative hearing:

| Name of Attorney | Hours Claimed | Hours Awarded | Hourly Rate | Total |
| --- | --- | --- | --- | --- |
| DeCrescenzo | 92.4 | 78.54 | $350 | $27,489 |
| Eisenman | 5.5 | 4.0 | $300 | $ 1,200 |
| Duffin | 0.4 | 0.2 | $75 | $     15 |
| **GRAND TOTAL** | | | | $28,704 |

We next turn to the hours expended on the fee application.

### 2. Fee Application Hours

A party may also recover attorney's fees for work on the fee application itself. See Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist., 71 F.3d 1053, 1059 (2d Cir. 1995) (second alteration in original) (quoting Gagne v. Maher, 594 F.2d 336, 344 (2d Cir. 1979), aff'd, 448 U.S. 122 (1980)) ("The [district] judge should have evaluated the worth of the [time spent preparing the fee application], since time reasonably spent by plaintiff's attorneys in establishing their fee would be compensable."); accord Knoll v. Equinox Fitness Clubs, 2006 WL 2998754, at *3 & n.33 (S.D.N.Y. Oct. 20, 2006) (citing Valley Disposal, 71 F.3d at 1059). However, the Supreme Court has held that "the determination of fees should not result in a second major litigation." Fox, 563 U.S. at 838 (internal quotation marks omitted); accord Ortiz

v. Chop't Creative Salad Co., 89 F. Supp. 3d 573, 590 (S.D.N.Y. 2015). Indeed, "[i]f the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly." Gagne, 594 F.2d at 344. Recognizing district courts' discretion concerning fee petition awards, the Second Circuit has found "no abuse of discretion in [a] district court's decision to award <u>no</u> fees for the time spent litigating . . . [a] fee petition." K.L. v. Warwick Valley Cent. Sch. Dist., 584 F. App'x 17, 20 (2d Cir. 2014) (emphasis added).

One case, Davis v. City of New Rochelle, 156 F.R.D. 549 (S.D.N.Y. 1994), found that the awards for time spent on fee applications have ranged between 8% and 24% of the award for time spent on the case itself. Id. at 561. Cases since Davis are similarly within this range. See, e.g., Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 525 (S.D.N.Y. 2002) (awarding on fee application 10% of total attorney's fees awarded); cf. Irish v. City of New York, 2004 WL 444544, at *8 (S.D.N.Y. Mar. 10, 2004) (awarding six hours for work on the fee application, or 3% of the 210 hours spent on the underlying case). Thus, in one case, where a litigant sought approximately 33% of the overall fees as expenses for the fee application, the court awarded approximately 10% of the main fee award. See Knoll, 2006 WL 2998754, at *3-4.

We begin by noting that there is a temporal restriction on the fees plaintiff may obtain. On April 3, 2018, defendants made an Offer of Settlement offering to pay fees, costs, and expenses through November 14, 2017, in the amount of $29,100.01. See D. Mem. at 4; Koroleva Decl. ¶¶ 1-5. We have already found that plaintiff was entitled to less than that amount as of June 2017. And there were no additional hours spent between June 30, 2017, and November 14, 2017. Thus, plaintiff may obtain additional fees only for the period of November

17

15, 2017, through April 3, 2018, which is the time period during which the fee application case was initially filed and before the initial pretrial conference was held in this case. See 20 U.S.C. § 1415(i)(3)(D)(i).

Based on the records provided to this Court, the hours claimed in the period are 1.9 hours of DeCrescenzo, 20.1 hours of Ben Brown, and 0.5 hours of paralegal Charlene Lolis. See Table of Services Rendered, at *1-2 (DeCrescenzo), *3-5 (Brown), and *5-6 (Lolis).

Defendants point to the fact that Gina DeCrescenzo, P.C. has filed similar fee applications in the past and thus the time to draft the complaint in this matter was excessive. See D. Mem. at 22-23. We agree that there are numerous similarities in fee application complaints filed by Gina DeCrescenzo, P.C., in other cases and in this case. Compare Complaint filed in B.B., 17 Civ. 4255, filed June 6, 2017 (Docket # 1), and Complaint filed in P.R., 17 Civ. 4887, filed June 28, 2017 (Docket # 1) with Complaint filed in O.R., filed December 21, 2017 (Docket # 1). In light of the similarities, it should not have taken a large number of hours to draft the complaint. At the same time, we commend DeCrescenzo for putting a junior attorney on the fee application, and thus we fully understand why it might have taken him some time to review the administrative record in this case to get a firm grasp of the justification for fees.

In the end, given the relatively small amount of hours expended during the limited time period for which fees may be sought, and given the fact that we are awarding no more than approximately 18% of the main fee award, we find this a case in which it is fair to do "rough justice," Fox, 563 U.S. at 838, and simply award the total amount claimed through April 3, 2018. Consistent with our prior ruling, however, we will eliminate the hours for Lolis because her hours involve secretarial work.

Thus the total amount awarded is:

| Name of Attorney | Hours Awarded | Hourly Rate | Total |
|---|---|---|---|
| DeCrescenzo | 1.9 | $350 | $   665 |
| Brown | 20.1 | $225 | $ 4,523 |
| **GRAND TOTAL** | | | $ 5,188 |

O.R.'s request for $543.11 in costs and expenses is reasonable and unopposed. See D. Mem. at *5 n.1.

In sum, plaintiff is awarded $33,892 in attorney's fees and $543.11 in costs and expenses, for a total of $34,435.11.

IV. CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket # 21) is granted and plaintiff is awarded a judgment against defendant in the amount of $34,435.11. The Clerk is requested to enter the judgment and to close this case.

Dated: November 26, 2018

New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge